IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EFREN NUÑEZ RIVERA, and PEDRO INFANTE, et al., | )<br>)<br>) |
| Plaintiffs, | ) Case No: 1:23-cv-14292<br>)<br>) Hon. Elaine E. Bucklo |
| v. | )<br>) Hon. Young B. Kim |
| PLATEIA, INC., d/b/a MEDITERRANEAN KITCHEN BAR, et al., | )<br>) Jury Trial Demanded<br>) |
| Defendants. | ) |

**PLAINTIFFS' AGREED AND UNOPPOSED MOTION
FOR SETTLEMENT APPROVAL**

**I.     INTRODUCTION**

Plaintiffs, Efren Nuñez Rivera ("Rivera"), and Pedro Infante ("Infante") (collectively, "Representative Plaintiffs") seek final approval pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA"), and respectfully move this Court for an Order approving their FLSA Settlement.[1] The Settlement was reached by experienced wage and hour counsel during arm's length, good faith negotiations, after extensive litigation, a full-day mediation before a third-party neutral, and after additional motion practice. The following documents are submitted for the Court's approval: Exhibit 1: Collective Action Settlement Agreement and Release and Exhibits, including the proposed Notice to Collective Members, written in both English and Spanish; Exhibit 2: Declaration of Max Barack; and Exhibit 3: Proposed Order Granting Approval of FLSA Settlement.

**II.     BACKGROUND**

On September 29, 2023, Rivera and Infante filed this collective action on behalf of themselves and others similarly situated against Defendants Plateia, Inc. d/b/a Mediterranean Kitchen Bar

---

[1] All capitalized terms not defined in this Motion shall have the meanings ascribed to them in the Class Action Settlement Agreement and Release (the "Agreement").

("Plateia"), Dimitri Douvlis ("Douvlis"), and Petros Papadatos ("Papadatos") (collectively, "Defendants"). Rivera and Infante (the "Representative Plaintiffs") and Defendants are collectively referred to as the "Parties." The lawsuit alleges violations of the Fair Labor Standards Act ("FLSA"), the Illinois Minimum Wage Law ("IMWL"), and the Cook County Minimum Wage Ordinance ("CCO"). ECF No. 1. Representative Plaintiffs alleged that Defendants failed to pay overtime compensation at one and one-half times their regular rate of pay for hours worked in excess of forty per workweek, instead paying straight time for overtime hours worked through a combination of check payments for regular hours and cash payments for overtime hours. *Id.*

The Parties engaged in extensive settlement negotiations throughout 2024, including informal discovery exchanges regarding pay records, hours worked, and disputed wages. They participated in a full-day mediation on November 22, 2024, which did not result in resolution. However, settlement discussions continued thereafter while the case proceeded.

Plaintiff filed several motions, all of which were granted: (1) Motion to Compel Rule 26(a) Disclosures; (2) Motion for Conditional Certification; (3) Motion to Enforce [Court Order], for Sanctions, for Contempt, and to Stay; and (4) Motion for Default Judgment, Civil Contempt, Sanctions for Failure to Comply with Court Orders, and to Compel Discovery. ECF Nos. 20, 24, 31, 45.

On April 24, 2025, following further negotiations, the Parties reached a collective-wide settlement for $500,000, inclusive of attorneys' fees, costs, and administration expenses. The settlement covers approximately 26 FLSA Collective Members—line cooks, dishwashers, and bussers employed by Defendants from September 29, 2020, through September 29, 2023.

Following the Court's Order granting Conditional Certification, notice was distributed on March 28, 2025, via mail, text, and email in both English and Spanish. Notices informed potential opt-

1

ins of their rights under the settlement. The Parties now seek final approval of the settlement as fair, reasonable, and adequate under the FLSA.

**III.     OVERVIEW OF PROPOSED SETTLEMENT AND DISTRIBUTION PROCESS.**

The Parties have agreed to resolve this matter for a total settlement of $500,000 (the "Global Settlement Fund"), allocated as follows: 1) $298,991.60 in Settlement Awards to FLSA Collective Members; 2) $20,000 in Service Awards ($10,000 each to the two Representative Plaintiffs); 3) $175,000 in attorneys' fees to Representative Plaintiffs' Counsel; 4) $6,008.40 in litigation costs; and 5) $10,000 allocated for Settlement Administration Costs. The Global Settlement Fund excludes Defendants' share of payroll taxes attributable to amounts paid as W-2 wages under the Agreement.

Settlement Awards will be distributed to Collective Members on a pro rata basis from the $298,991.60 Net Settlement Fund. Each Member's share is proportional to their estimated unpaid overtime wages during the relevant period: September 29, 2020 through present. During extended settlement negotiations—and prior to the November 2024 mediation—Defendants produced payroll and timekeeping records, enabling Representative Plaintiffs' Counsel to verify both their own damages estimates and those presented by Defendants.

Plaintiffs' calculations were based on Defendants' representative records, including timecards and pay data for the Representative Plaintiffs. These records revealed that Defendants uniformly paid employees straight time for all hours worked, including those over 40 per week, in violation of the FLSA and IMWL.

The methodology for damage calculations is as follows:

1. Class Composition and Overtime Estimates: overtime hours were averaged by job classification, as follows: a) *Line Cooks*: 27.8 overtime hours/week; b) *Bussers*: 2.5 overtime hours/week; and c) *Dishwashers*: 1.5 overtime hours/week.

These averages were derived from pay data and corroborated by sworn statements and discovery. See ECF Nos. 20, p. 1-15; No. 20-1 – 20-4; 21-1 – 21-4 (Motion for Conditional Certification and all accompanying Exhibits A-E, which were filed in multiple parts due to file size).

2. Time Period: damages were calculated for the three-year period beginning September 29, 2020, consistent with the FLSA statute of limitations.

3. Unpaid Wages Calculation: because overtime was paid at straight time instead of time-and-a-half, unpaid wages were computed by applying one-half of each employee's regular hourly rate to their overtime hours.

4. IMWL Penalties: damages included mandatory penalties under the IMWL: 5% monthly statutory interest on unpaid wages (820 ILCS 105/12(a)); and treble damages for wage violations.

5. Initial Aggregate Damages Estimate (as of August 2, 2024): a) line Cooks: $458,877 → $1,974,837 (with penalties); b) bussers: $34,038 → $144,002; and c) dishwashers: $34,266 → $148,129. Total: $527,180 (pre-penalties) → $2,266,968 (with penalties).

6. Refinement and Final Estimate: following Defendants' provision of certain supplemental information, certain individuals were excluded from the collective based on job duties, classification, or insufficient overtime evidence, as well as for managerial or ownership status. The revised collective and adjusted calculations yielded an updated damages estimate of $255,623.55, which serves as the foundation for the negotiated settlement amount.

7. Supporting Documentation: all calculations were verified using the "master" damages spreadsheet (Exhibit 6 to the mediation submission), incorporating Defendants' records, employee statements, and timekeeping data.

To facilitate proper tax reporting and compliance, the individual Settlement Awards will be structured as: (a) all payments allocated as unpaid wages will be treated as taxable wage income paid under IRS Form W-2, subject to ordinary payroll withholdings under federal and state law; and (b) all

3

amounts calculated as statutory penalties treated as non-wage income paid under IRS Form 1099. Defendants will be responsible for all required employer contributions with respect to portions of the Settlement Awards paid as wages under IRS Form W-2, and these contribution amounts will not be deducted from the Global Settlement Fund.

The Settlement Administrator will distribute payments to FLSA Collective Members within 21 days of the Effective Date of the settlement. To ensure maximum participation, the Settlement Administrator will send reminder postcards to any Collective Members who have not cashed their settlement checks 60 days and 30 days before the check void date. Any settlement checks that remain uncashed after 180 days from the initial distribution date will be void, and such funds will be treated as reverting back to Defendants in accordance with the Settlement Agreement.

### IV. NOTICE AND DISTRIBUTION PROCESS.

This matter proceeds under a one-step settlement approval process. In accordance with the Settlement Agreement, notice was not issued to FLSA Collective Members prior to Court approval. Instead, notice and payment will follow the Court's entry of a Final Order and Judgment. Within 21 days of the Effective Date (defined as 21 days after the Final Order and Judgment), the Settlement Administrator will mail: (1) the Court-approved Notice of Settlement and (2) each Collective Member's Settlement Award via first-class mail.

The Notice, sent in English and Spanish, will explain the basis for the award, the terms of the Settlement, and the scope of the release. Each check will include the following endorsement: "By cashing or depositing this check, I confirm my consent to join the Settlement, which includes releasing claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*."

Each Settlement Award will be issued as a single check: wages will be treated as W-2 income, and penalties as 1099 non-wage income, subject to applicable tax reporting and withholding. The Settlement Administrator will issue corresponding tax forms. To encourage prompt negotiation,

4

reminder postcards will be sent 60 and 30 days before the 180-day void date. Checks not cashed within 180 days will be voided and the funds redistributed to Defendants, consistent with the Final Approval Order. To ensure accurate mailing, the Settlement Administrator will verify addresses through the USPS National Change of Address database. Within 14 days of Court approval, Defendants will provide an Excel spreadsheet listing each Collective Member's name, last known address, Social Security number, and employment dates. This post-approval process ensures timely, compliant notice and payment in accordance with Paragraphs 33–39 of the Settlement Agreement.

## V. THE STANDARD FOR FLSA SETTLEMENT APPROVAL FAVORS APPROVING THIS SETTLEMENT.

The Settlement is subject to Court approval under § 216(b) of the FLSA. In the Seventh Circuit, courts typically follow a one-step approval process in FLSA settlements that do not include Rule 23 classes. *See, e.g., Furman v. At Home Stores LLC*, 2017 WL 1730995, at *1 (N.D. Ill. May 1, 2017); *Briggs v. PNC Fin. Servs. Grp., Inc.*, 2016 WL 7018566, at *1 (N.D. Ill. Nov. 29, 2016); *Castillo v. Noodles & Co.*, 2016 WL 7451626, at *1 (N.D. Ill. Dec. 23, 2016); *Prena v. BMO Fin. Corp.*, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015). Collective actions under the FLSA require that collective members affirmatively opt in, meaning there is no due process concern, and the heightened Rule 23 standard does not apply. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771 (7th Cir. 2013); *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013).

Courts may approve settlements of FLSA claims "after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353–55 (11th Cir. 1982) (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946)). In doing so, courts evaluate whether the agreement is "a fair and reasonable resolution of a bona fide dispute." *Id.*

The FLSA was enacted "for the purpose of protecting workers from substandard wages and oppressive working hours." *Lynn's Food Stores*, 679 F.2d at 1352 (citing *Barrentine v. Arkansas–Best Freight System*, 450 U.S. 728 (1981)). Due to "great inequalities in bargaining power between employers and

5

employees," Congress made the FLSA's provisions mandatory. *Id.* As a result, the Act's protections "are not subject to negotiation or bargaining between employers and employees." *Id.* (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945)). For this reason, settlements of FLSA claims for back wages require approval by the Department of Labor or a district court. *Id.* at 1352–53; see also *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986).

Accordingly, claims for back wages and other damages under the FLSA may be settled or compromised with court approval. See *Lynn's Food Stores*, 679 F.2d at 1352–54; *Lewis v. Giordano's Enterprises*, 397 Ill. App. 3d 581, 595, 921 N.E.2d 740, 751 (1st Dist. 2009). A court should grant approval if the settlement resulted from contested litigation and represents a fair and reasonable resolution of a bona fide dispute. See *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474 (S.D.N.Y. 2013); *Fosbinder-Bittorf v. SSM Health Care of Wis., Inc.*, No. 11-cv-592, 2013 WL 5745102, at *1 (W.D. Wis. Oct. 23, 2013); *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 994–95 (N.D. Ind. 2010); *Butler v. Am. Cable & Tel., LLC*, No. 09-cv-5336, 2011 WL 4729789, at *8–9 (N.D. Ill. Oct. 6, 2011).

In private enforcement actions under 29 U.S.C. § 216(b), the court should undertake two inquiries: (1) whether the dispute involves a bona fide controversy over FLSA coverage or liability, and (2) whether the settlement represents a fair and reasonable resolution of that dispute. See *Lynn's Food Stores*, 679 F.2d at 1352–54; *Butler*, 2011 WL 4729789, at *9 n.9; *Roberts v. Apple Sauce, Inc.*, No. 3:12-cv-830, 2014 WL 4804252, at *1 (N.D. Ind. Sept. 25, 2014). First, the Court must be satisfied that the settlement was the product of "contested litigation." Second, the Court must be satisfied that the settlement involves a fair and reasonable resolution of a bona fide dispute between the Parties. Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicium of fairness. Lynn's Food Stores, Inc., 679 F.2d at 1354. If the proposed settlement reflects a reasonable compromise over contested issues, the Court may approve the settlement to promote the policy of encouraging settlement of litigation. Id. Based on the contested nature of this litigation and

6

the quality of the Settlement, this Court should conclude that this Settlement is a reasonable resolution of a bona fide dispute in contested litigation.

### A. The Proposed Settlement is the Result of Contested Litigation.

The proposed Settlement is a result of contested litigation. Each factor supports approval here. The Parties' negotiations extended over many months and followed both active litigation and a full-day mediation. The resulting Settlement provides each participating FLSA Collective Member with more than 100% of their calculated unpaid overtime wages, as well as an additional penalty component designed to compensate for delay and reflect liquidated/statutory damages under the FLSA.

### B. The Proposed Settlement Is Fair, Adequate, and Reasonable.

Courts evaluating the fairness of FLSA settlements consider whether (1) the settlement was honestly and fairly negotiated; (2) serious questions of law and fact exist that place outcome in doubt; (3) the value of immediate settlement outweighs the risks of protracted litigation; and (4) in the parties' judgment, the settlement is fair and reasonable. *Soto v. Wings 'R Us Romeoville, Inc.*, 2018 WL 1875296, at *1 (N.D. Ill. Apr. 16, 2018) (citing *Cannon v. Time Warner NY Cable LLC*, No. 13-cv-02521, 2015 WL 4498808 (D. Colo. July 24, 2015)). Each factor supports approval here.

#### 1. Settlement Achieved Through Informed, Arm's-Length Negotiations.

The Parties' negotiations spanned several months and followed both active litigation and a full-day mediation. The resulting Settlement reflects the product of arm's-length bargaining by experienced counsel informed by a meaningful exchange of time and payroll data.

#### 2. The Settlement Reflects Full Compensation and a Penalty Component.

The Settlement provides each participating FLSA Collective Member with 100% of their calculated unpaid overtime wages, as well as an additional penalty component designed to compensate for delay and reflect liquidated/statutory damages under the FLSA. Notably, the agreed-upon settlement awards represent a complete or greater than recovery for each class member. Based on

7

Plaintiffs' March 5, 2025, revised damages calculations as, the average recovery exceeds 117% of each individual's estimated unpaid wages.[2]

This complete-to-surplus compensation strongly supports approval. See *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (approving settlement for 10% of total damages due to litigation risk). Here, Collective Members are receiving over 100% of what Plaintiffs' Representative Counsel calculated as owed, even before accounting for the continued litigation risks they would otherwise face, including challenges to willfulness, the application of the de minimis doctrine, ongoing disputes about collective certification, and Defendants' ability to pay a more significant damage award. Moreover, experienced wage-and-hour counsel endorses the resolution as fair and adequate given the underlying facts, litigation risk, and the actual payments secured. Courts routinely credit such professional judgment. See *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) ("the district court was entitled to give consideration to the opinion of competent counsel that the settlement was fair, reasonable and adequate").

### 3. The Settlement Avoids Litigation Risks and Costs.

Absent settlement, the Parties would face significant expenses and uncertainty through additional discovery, motion practice, and trial. Key issues in dispute include the regular rate calculation, applicability of the de minimis doctrine, and willfulness. Settlement allows prompt recovery for low-wage workers and avoids years of litigation.

### 4. Sufficient Discovery Was Conducted.

While no formal depositions occurred, the Parties exchanged essential timekeeping and payroll records. This enabled Representative Plaintiffs' Counsel to analyze damages thoroughly and negotiate an informed resolution.

---

[2] See Exhibit 5, table of damage payments to collective members.

### 5. Experienced Counsel Support Approval and there is No Evidence of Collusion or Fraud

Representative Plaintiffs' Counsel, with substantial experience in wage and hour litigation, supports the settlement as fair and reasonable. Courts routinely defer to the judgment of experienced counsel in approving FLSA settlements. *See Isby*, 75 F.3d at 1200. There is no collusion or fraud.

### 7. Favorable Reaction from the Collective.

Notices were mailed to approximately 26 FLSA Collective Members in English and Spanish. There is no need to require that the settlement provide for opt-outs or objections where the individuals are not part of the settlement unless they decide to participate in it. See *Prena v. BMO Fin. Corp.*, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015).

### 8. The Settlement Advances the Public Interest.

The Settlement furthers the FLSA's goals by compensating workers for unpaid overtime and deterring future violations. It also conserves judicial resources by resolving the claims before trial.

### C. The Distribution Method Is Fair and Equitable

The settlement distributes $298,991.60 to Collective Members on a pro rata basis using detailed time and payroll data. A wages/penalties W-2/1099 allocation balances tax implications while maximizing net recovery. Settlement administration includes bilingual notices and follow-up communications to maximize participation. For these reasons, this Court should grant final approval of the FLSA settlement.

## VI. REPRESENTATIVE PLAINTIFFS' SERVICE AWARD IS PROPER AND REASONABLE.

In addition to the respective individual settlement payments, the Agreement provides for a service award of $10,000 to each Representative Plaintiff. Courts may make separate awards to class representatives in recognition of their risks taken, time expended, and benefits to the class. See *Espenscheid v. Direct Sat USA, LLC*, 688 F. 3d 872, 876-77 (7th Cir. 2012). The role of Representative

9

Plaintiffs in this matter was vital. Representative Plaintiffs initiated the lawsuit, review, and approved the Complaint. Representative Plaintiffs contributed significant time, effort, and detailed factual information enabling Representative Plaintiffs' Counsel to evaluate the strengths of the claims and reach a Settlement. Defendants agree this amount is reasonable and do not contest this applications. This payment comports with service payments recently awarded to named Plaintiffs in other FLSA actions. *See e.g., Day v. NuCO2 Mgmt., LLC*, 1:10-CV02088, 2018 WL 2473472, at *2 (N.D. Ill. May 18, 2018)($7000 approval for 1 named plaintiff); *Furman*, 2017 WL 1730995, at 3 (approving $10,000 service award in overtime collective action); *Briggs*, 2016 WL 7018566, at * 2 (approving $12,500 service award in overtime collective action). Thus, the service award is reasonable and should be approved.

## VII. THIS COURT SHOULD APPROVE REPRESENTATIVE PLAINTIFFS' COUNSEL'S REQUESTED ATTORNEYS' FEES.

The Settlement Agreement provides for attorneys' fees of $175,000, representing 35% of the Global Settlement Fund, plus $6,008.40 in litigation costs. This fee request is fair and reasonable and warrants approval under established legal principles governing fee awards in FLSA settlements.

### A. The Requested Fee Award is Reasonable Under the Percentage Method.

Representative Plaintiffs' Counsel undertook this case on a purely contingent basis, advancing all costs without any guarantee of payment. This structure served the interests of Collective Members, who could not afford hourly fees.

Courts in this Circuit routinely approve percentage-based fee awards in wage and hour cases, recognizing that contingency arrangements align counsel's incentives with those of the class and account for the risk of nonpayment. See *Briggs v. PNC Fin. Servs. Grp., Inc.*, 2016 WL 7018566, at *3 (N.D. Ill. Nov. 29, 2016) (citing *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001)); *Taubenfeld v. AON Corp.*, 415 F.3d 597, 600; *Sutton v. Bernard*, 504 F.3d 688, 693–94 (7th Cir. 2007); *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 565 (7th Cir. 1994).

10

The requested fee of 35% reflects the crucial role contingency arrangements play in enabling access to justice, especially for low-wage workers. Employment counsel who litigate on contingency often spend years on cases—incurring costs for experts, transcripts, travel, etc.—with no guarantee of recovery. This model is only viable when attorneys recover more in successful cases to offset losses in others. Courts recognize this reality. See *In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*, 724 F. Supp. 160, 168 (S.D.N.Y. 1989).

This access-to-justice function is particularly important in the employment context, where contingency arrangements allow firms like The Garfinkel Group, LLC to pursue wage claims in the public interest. See *Skirchak v. Dynamics Research Corp.*, 432 F. Supp. 2d 175, 178–79 (D. Mass. 2006) (Lasker, J.) ("Allowing private attorneys to prosecute such actions in the aggregate effectively ensures enforcement of the wage laws..." Id. at 179).

The 35% request also falls well within the range approved in this District for FLSA settlements. See, e.g., *Furman v. At Home Stores LLC*, 2017 WL 1730995, at *4 (N.D. Ill. May 1, 2017); *Sanchez v. Roka Akor Chicago, LLC*, 2017 WL 1425837, at *6 (N.D. Ill. Apr. 20, 2017); *Castillo v. Noodles & Co.*, 2016 WL 7451626, at *4; *Taubenfeld*, 415 F.3d at 599–600; *Gaskill v. Gordon*, 160 F.3d 361, 362–63 (7th Cir. 1998); *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 842; *Svagdis*, 2017 CH 12566 (Cir. Ct. Cook Cty. Ill. Jan. 14, 2019) (40%); *Willis v. iHeartMedia, Inc.*, 2016 CH 02455 (Cir. Ct. Cook Cty. Ill.); *Sterk v. Path, Inc.*, 2015 CH 08609 (Cir. Ct. Cook Cty. Ill.); *Newberg on Class Actions* § 14.6 (4th ed. 2002) ("[F]ee awards in class actions average around one-third of the recovery."); *McClain v. DX Enters.*, 23-cv-1168-DWD (S.D. Ill. Apr. 15, 2025) (awarding Garfinkel Group 35%).

The fee request is further supported by the excellent result achieved. The $298,991.60 allocated to Settlement Awards provides significant compensation for alleged unpaid overtime, particularly given the litigation risks. These results were secured through Counsel's efficient prosecution and effective settlement negotiations.

Accordingly, the Court should approve attorneys' fees of 35% of the Settlement Fund ($175,000) and litigation costs of $6,008.40. Representative Plaintiffs also request payment of $10,000 to [TBD], the Settlement Administrator. These amounts were disclosed in the Notice, which clearly explained their impact on recoveries. No Settlement Class Member objected.

Reimbursement of litigation expenses and administration costs from the common fund is routinely approved. See *Zolkos v. Scriptfleet, Inc.*, 2015 WL 4275540, at *3 (N.D. Ill. July 13, 2015). Here, Counsel's litigation costs total less than $1,000, and administration costs are under the $15,000 cap. Both are reasonable. See *Young*, 2020 WL 969616, at *6.

Finally, a 35% fee reflects the substantial time and effort expended. As of this filing, Counsel has devoted 191.85 hours and approximately $97,950 in attorney and paralegal time (prior to the efforts to finalize the settlement agreement, being forced to file a motion to enforce settlement and then a motion to withdraw the same), including extensive motion practice and settlement negotiations.

Based on the excellent results achieved, the risks undertaken, and the work performed, the 35% request is fair, reasonable, and should be approved.

### B.  The Fee Request is Also Reasonable Under the Lodestar Cross-Check.

While not required, a lodestar cross-check further supports the reasonableness of the requested fee award. To determine a reasonable fee, the district court uses the lodestar method, multiplying the "number of hours reasonably expended on the litigation…by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The lodestar approach forms the "centerpiece" of attorneys' fees determination, and it applies even in cases where the attorney represents the prevailing party pursuant to a contingent fee agreement. *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989). A reasonable hourly rate is one that is "derived from the market rate for the services rendered." *Denius v. Dunlap*, 330 F. 3d 919, 930 (7th Cir. 2003).

Representative Plaintiffs' Counsel has invested substantial time and resources in this litigation, including: (A) investigating the claims and gathering evidence prior to filing; (B) drafting the complaint and other pleadings; (C) analyzing time and payroll records to calculate potential damages; (D) engaging in settlement negotiations; (E) engaging in extensive motion practice, including filing, and winning: (1) Motion to Compel Production of Rule 26(a) Disclosures; (2) Motion for Conditional Certification; (3) Motion to Enforce [Court Order], for Sanctions, for Contempt, and to Stay; and 4) a Motion for Default Judgment, Civil Contempt, Sanctions for Failure to Comply with Court Orders, and to Compel Discovery Responses (See ECF Nos. 20; 24; 31; 45); and (F) preparing settlement documentation and approval motions.

### C. Additional Factors Support the Requested Fee.

Several additional factors support approval of the requested fee award. Representative Plaintiffs' Counsel brought substantial experience in wage and hour litigation to bear in efficiently prosecuting and resolving this action, and the lack of any objections to the requested fee award from collective members supports its reasonableness.

The requested litigation costs of $6,008.40 are also reasonable and were necessarily incurred in prosecuting this action. These costs include filing fees, service costs, mediation fees, and other ordinary litigation expenses that are routinely approved in FLSA settlements.

For these reasons, the Court should approve the requested attorneys' fees of $175,000 and litigation costs of $6,008.40 as fair and reasonable compensation for Representative Plaintiffs' Counsel's effective representation of the collective members in this action.

## VIII. CONCLUSION

For the foregoing reasons, the Parties respectfully request that this Court: (1) grant final approval of the Settlement Agreement as fair, reasonable, and adequate; (2) approve the requested attorneys' fees of $175,000 and litigation costs of $6,008.40; (3) approve the Service Awards of $10,000

each to Representative Plaintiffs Efren Nuñez Rivera and Pedro Infante; (4) authorize the Settlement Administrator to distribute the settlement payments in accordance with the terms of the Settlement Agreement; and (5) retain jurisdiction over this matter for purposes of enforcing the Settlement Agreement.

| | |
|---|---|
| The Garfinkel Group, LLC<br>Andrew Fullett<br>andrew@garfinkelgroup.com<br>Max Barack<br>max@garfinkelgroup.com<br>THE CIVITAS<br>701 N. Milwaukee Ave.<br>Chicago, Illinois 60642<br>(312) 736-7991 | Respectfully submitted,<br><br>*/s/ Max Barack*<br>One of the Plaintiffs' Attorneys |

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that he caused a true and correct copy of the foregoing to be served on all counsel of record by ECF on July 26, 2025.

*/s/ Max Barack*